IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01807-WDM

RONALD A. LEIKER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

Plaintiff Ronald A. Leiker ("Leiker") appeals the denial of his application for disability insurance benefits by defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record. For the reasons that follow, I conclude this case should be remanded to the Commissioner.

Background

Leiker was born in 1958. Administrative Record at 56. He has a high school education, some college, and worked for 24 years in the manufacturing division at Storage Technology, primarily in managerial and supervisory positions. *Id.* at 60, 65, 70, 98. After being laid off in 2002, he worked for a few months as a bus driver in 2003. *Id.* at 60.

Leiker asserts he is disabled as of February 4, 2003, after he had a hip replacement. *Id.* at 59, 157-59. He also alleges disabling conditions from degenerative disc disease. *Id.* at 59. His protective filing date for disability insurance and supplemental

security income benefits is November 7, 2003.  *Id*. at 68.

Medical History

Leiker had some previous medical treatment for carpal tunnel syndrome and a problem with his thumb, including an endoscopic surgery in August 2000.  *Id*. at 198-201. Dr. Thomas G. Fry, his hand surgeon, declared in medical notes on March 15, 2001 that Leiker made a good recovery and had no restrictions or impairments.  *Id*. at 206.

Leiker began seeing David Parker, D.O., for various back, neck and shoulder conditions in January 2000 and saw him regularly through 2003.  *Id*. at 178-95.  Leiker began having pain in his right hip in 2001, which he treated with Celebrex.  *Id*. at 167.  In 2002, he began consulting with Dr. Martin A. Senicki, an orthopedic surgeon.  *Id*.  Dr. Senicki found degenerative changes and narrowing of the joint space.  *Id*.  Dr. Senicki performed a right hip arthroplasty on February 4, 2003.  *Id*. at 164.  Leiker's recovery was generally good.  *Id*. at 163.  In April 2003, Leiker reported to Dr. Senicki that he was swimming and biking.  *Id*.  In August 2003, Dr. Senicki's notes reflect that Leiker had begun driving a bus and had been active, but was noticing increasing pain if he sat for long periods of time on hard surfaces; Dr. Senicki "encouraged [Leiker] to continue slowly increasing his activities" but to avoid running or jumping-type activities.  *Id*.

Dr. Senicki wrote a letter dated October 2, 2003, in which he opined that Leiker "will need retraining into a job position which is predominantly sedentary, requires no lifting more than 25 lbs., as well as no climbing, squatting or crawling."  *Id*. at 166.

Leiker has a history of back pain going back to approximately 1991.  He saw Dr. Ranee Shenoi in October and November 2001, who diagnosed "Lumbar spondylosis with facet arthropathy" and "Axial low back pain."  *Id*. at 211.  In the exam, Dr. Shenoi noted

tenderness at L4-5, normal heel and toe walking, painful spine extension, and limited flexion. *Id.* In January 2002, Leiker consulted with Dr. Douglas C. Wong about surgical options for his back. *Id.* at 152. Dr. Wong noted lumbago and L5-S1 degenerative disc disease as well as multilevel lumbar disc dehydration. *Id.* at 151. Dr. Wong determined that Leiker was not a good candidate for surgery because a fusion at L5-S1 could increase the risk of further degeneration at the adjacent levels. *Id.*

Dr. Everett Spees performed a consultative examination of Leiker on or around January 9, 2004. *Id.* at 169. At that time, Leiker reported that he could not sit for long periods of time and had to move around frequently, could stand for only about 10 minutes at a time, and was no longer able to swim but rather just soaked in the hot tub or got in the water to walk. *Id.* at 170. He was taking ranitidine (for ulcers), Celebrex, Ambien (for sleep), ibuprofin, Zocor, and aspirin. *Id.* Dr. Spees noted muscle spasms and tenderness in the lumbar region, pain in the right hip, normal forward flexion, limited backward extension, abnormal hip abduction and adduction on the right side, a slight limp, normal upper extremity motion, neck pain, and low back pain. *Id.* at 171-72. However, Dr. Spees did not have Leiker's medical records to confirm many of the self-reported history and conditions. *Id.* at 172. Dr. Spees opined that Leiker could work with the following restrictions: 25 pound lifting and carrying, one hour of standing or walking, one hour of sitting at a time with the ability to change positions, no climbing, stooping, kneeling, pushing, pulling, crouching, or crawling, but no restrictions on balancing, reaching, and manual tasks. *Id.* at 172. At the hearing, Leiker testified that he performed beyond his capacity in Dr. Spees's examination and suffered severe pain afterwards. *Id.* at 281-82.

Dr. Parker completed a Medical Assessment of Ability to do Work Related Activities

on October 19, 2004. *Id.* at 173-77. In it, he opined that Leiker could lift or carry no more than 20 pounds occasionally, could sit no more than one hour at a time for a maximum of two hours a day, could stand no more than 30 minutes for a maximum of two hours a day, and could walk no more than 15 minutes for a maximum of two hours a day, and would have to change positions every 15 minutes. *Id.* at 173-74. He permitted occasional manual tasks (reaching, handling, fingering, feeling, pushing/pulling) and frequent use of both feet to operate foot controls, occasional stair climbing but no ladders, stooping, crouching, kneeling, crawling, or balancing. *Id.* at 174-75.

Administrative Proceedings

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [his] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

Leiker's claim was disapproved on January 15, 2004 based on the determination that he could do work other than his previous work. *Id.* at 42. He filed a timely appeal and requested hearing before an Administrative Law Judge (ALJ). *Id.* at 18.

The hearing was held on January 6, 2005. *Id.* at 234. Leiker was represented by counsel at the hearing. *Id.* Leiker testified that his back pain was the most serious problem and had been ongoing since 1991. *Id.* at 258-59, 265-67. He had had several

knee surgeries, carpal tunnel surgery and the hip surgery. *Id*. at 192, 196, 263. He testified that his hip was not as painful as it had been before surgery or while driving the bus. *Id*. at 244. He applied for the bus driving job because his unemployment ran out; he began working in July 2003 but had to stop in November 2003 because pushing the gas and brake pedals aggravated his hip pain. *Id*. at 236-37, 243. He reported shoulder pain. *Id*. at 259-60. He could no longer afford prescription medication but took Aleve and ibuprofin. *Id*. at 245-46. He does few household chores but helps with dishes and cooking. *Id*. at 260-61. He goes shopping, but has to lean on the cart for support. *Id*. at 248. Other activities include playing board games with his children and helping with his children's activities, such as Girl Scouts, and watching television. *Id*. at 247-53. He worked with a vocational rehabilitation service to try to find a job, but was unsuccessful. *Id*. at 255-57, 282-84.

A vocational expert (VE) also gave testimony. *Id*. at 286-305. He testified that there were jobs in the economy that could be performed by a person of Leiker's age, education, and work experience, who had the residual functional capacity for light to sedentary work with certain limitations. *Id*. at 287-89, 301-303.

The ALJ issued a decision on April 28, 2005. *Id*. at 18-28. The ALJ made the following findings:

1.  Leiker had engaged in substantial gainful activity by driving a bus from July 14, 2003 to November 6, 2003 and that this was not an unsuccessful work attempt under 20 C.F.R. § 404.157(c). *Id*. at 19. Therefore, the ALJ would complete the disability analysis for the period after November 6, 2003. *Id*. at 20.

2.  Leiker had several severe impairments, specifically status-post right hip replacement, status-post right CMC joint arthroplasty, lumbar degenerative disc disease. *Id*. at 20. The ALJ considered Leiker's claimed impairment for

5

       carpal tunnel syndrome but found that there was no basis to find such an impairment. *Id.* None of the impairments, alone or in combination, met the criteria for a listed disability. *Id.* at 20-21.

3. In determining Leiker's residual functional capacity, the ALJ reviewed Dr. Senicki's post-surgery notes, Dr. Spees's consultative examination report, and Dr. Parker's October 4, 2004 opinion statement on Leiker's limitations, as well as Leiker's subjective allegations. *Id.* at 21-23. The ALJ found Leiker's testimony of disabling pain not credible. *Id.* at 23. As grounds he noted that Leiker continued to look for work, that he alleged Dr. Senicki told him to stop working as a bus driver but that the medical notes do not reflect this, that Dr. Senicki opined that Leiker could do sedentary work, and that Leiker had not continued treatment for hip pain after October 2003.

4. The ALJ found that Leiker could do sedentary work, sitting 1-2 hours at one time with brief stretch breaks, could stand or walk for 10-15 minutes at one time not exceeding two hours in one day, could lift or carry 20 pounds occasionally or 10 pounds frequently, could occasionally stoop, crouch or kneel but should not perform any climbing or crawling or operate foot controls. *Id.* at 23. The RFC included no exposure to extreme cold or vibrations but permitted frequent reaching, handling, and fingering, with no over-the-shoulder work. *Id.* at 24.

5. In making this assessment, the ALJ gave great weight to the opinions of Dr. Senicki and Dr. Fry and some weight to Dr. Spees, the consulting examining physician. The ALJ gave little weight to Dr. Parker's opinions. *Id.* at 24. The ALJ noted a number of inconsistencies between Dr. Parker's imposed limitations and the treatment notes and other medical evidence. *Id.* Specifically, Dr. Parker opined that Leiker could not use his hand repetitively but permitted occasional reaching, handling, and fingering. *Id.* Dr. Parker's treatment notes indicated probable right shoulder cuff tendonitis but Leiker did not complete the prescribed physical therapy and the record showed no further treatment of his shoulder after October 2002. *Id.* Accordingly, there was no evidence to support the reaching impairments. *Id.* In addition, the ALJ found that Dr. Parker's limitations on stooping, crouching, or balancing were "an evident exaggeration" unsupported by any medical evidence. *Id.* The ALJ further rejected Dr. Parker's opinion that Leiker could sit no more than two hours a day as inconsistent with Dr. Senicki's opinions and Leiker's work as a bus driver, which ceased because of problems with using pedals, not sitting, as well as his self-reported bike riding. *Id.* The ALJ also noted but gave little weight to a residual functional capacity assessment prepared by a state agency disability examiner. *Id.* at 25.

6. Leiker would be unable to perform his past relevant work but could perform other jobs that exist in significant numbers in the national economy,

6

>according to the testimony of the vocational expert. *Id.* at 25-26. Accordingly, the ALJ found that Leiker was not disabled. *Id.* at 26.

After the hearing, Leiker submitted additional evidence to the Appeals Council. Specifically, he provided an additional letter and treatment note from Dr. Parker, in which Dr. Parker explains that he has treated Leiker long term for his conditions and that he stands by his assessment because of Leiker's past medical history and on-going arthritis and degenerative conditions affecting multiple joints. *Id.* at 221-22. Leiker also provided new treatment notes from Dr. Senicki, in which Dr. Senicki opines about a number of restrictions, including a two hour per day maximum limit on sitting. *Id.* at 226. He also provided a letter from Dr. Wong in which Dr. Wong describes Leiker's multi-level disc problems and opines that Dr. Parker's restrictions are appropriate. *Id.* at 227. The Appeals Council denied a request for review, rendering the ALJ's determination final for purposes of this appeal. *Id.* at 7-9. Specifically, the Appeals Council stated that the x-rays showed no problems with Leiker's hip prosthesis and that Dr. Senicki's assessment of Leiker's functional capacity was based upon subjective complaints that the ALJ did not find to be fully credible.

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner must apply the correct legal

7

standard, and must provide the court with a sufficient basis to determine that appropriate legal principles were followed. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993).

Discussion

Leiker makes four arguments on appeal: (1) the ALJ did not properly assess the evidence from Leiker's primary treating physician; (2) the ALJ did not properly consider evidence from all treating medical sources; (3) the ALJ erred in his credibility determination; and (4) the ALJ erred in determining that Leiker's employment as a bus driver was not an unsuccessful work attempt.

1.  Treating Physician

Leiker argues that the ALJ erred in deciding to give Dr. Parker's opinions about Leiker's limitations little weight. It appears to be undisputed that Dr. Parker is a treating physician.

The ALJ is required to evaluate every medical opinion he receives. 20 C.F.R. §§ 404.1527(d) and 416.927(d). The opinion of a treating source is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188). If the ALJ determines the treating source medical opinion is not entitled to controlling weight, it should not be rejected outright. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* at 1300 (quoting SSR 96-2p). These

8

factors are:

>   (1) the length of the treatment relationship and the frequency of examination;
>
>   (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

Before an ALJ can reject the opinion of a treating physician completely, he must give specific, legitimate reasons for doing so. SSR 96-2p; *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). "[I]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (citation omitted).

I agree with Leiker that there are several problems with the ALJ's rejection of Dr. Parker's opinions. The ALJ contended there were "internal inconsistencies" in Dr. Parker's limitations, such as Dr. Parker's opinion that Leiker could not use his hand

9

repetitively but was permitted occasional manual tasks. I see no inconsistency between these two limitations, since "occasional" use of the hands is not the same as "repetitive" use. In addition, I am troubled by the ALJ's characterization of Dr. Parker's limitations on stooping, crouching, or balancing as "an evident exaggeration" and unsupported by medical evidence. To the contrary, there is significant medical evidence showing multiple degenerative and arthritic problems, long-standing lumbar spine disorders not treatable by surgery, and multiple knee surgeries. Moreover, Dr. Spees imposed the same limitations on stooping and crouching. Accordingly, these are not legitimate bases for rejecting Dr. Parker's opinion.

Moreover, it appears that the ALJ did not consider several of the *Watkins* factors. I see no mention of the extended treatment relationship or frequency of treatment and examination by Dr. Parker, Dr. Parker's coordination and consideration of referrals to the various specialists, and the types of examinations performed by Dr. Parker. Finally, as further discussed below, several of the alleged inconsistencies between Dr. Parker's opinions and those of Dr. Senicki and the record as a whole are altered by the new evidence and treatment notes submitted to the Appeals Council, which further undermines the ALJ's treating physician analysis.

2.    Failure to consider other medical source evidence

Leiker next contends that the ALJ erred by failing to consider reports and assessments by Dr. Shenoi and Dr. Wong. He asserts that these opinions support Dr. Parker's assessment of Leiker's functional limitations. I agree that the ALJ did not expressly mention these source statements; however, I disagree with Leiker that they

support Dr. Parker's opinions or otherwise affect the RFC determination.

Dr. Shenoi apparently saw Leiker once or twice in 2001, two years before his alleged disability onset. He confirms that Leiker has back problems, but offers no opinions or assessments about Leiker's ability to sit during a normal workday. Similarly, Dr. Wong, who saw Leiker in October and November 2001, diagnoses lumbar back problems but his opinions relate only to surgical options. The examination notes do not provide any information about limitations on sitting or Leiker's ability to do work related activities. The ALJ identified Leiker's low back problem as a "severe" impairment at Step 2; in addition, as noted by the government, Leiker was still employed when he saw these doctors and continued working with these conditions. Accordingly, even if the ALJ erred in failing to show that he considered these medical sources, I conclude that the error is harmless.

3.  Credibility determination

In general, credibility determinations are the province of the fact finder, but nonetheless should be closely and affirmatively linked to substantial evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (as amended) (citation omitted). The Social Security rulings direct an ALJ to give reasons for a credibility finding that are supported by the record and are sufficiently specific to inform reviewers of the weight given to a claimant's statements and the reason for that weight. *See* Social Security Ruling 96-7p.

The factors to be considered in evaluating subjective allegations of pain, "an evaluation that ultimately and necessarily turns on credibility," include: "1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether

11

there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling." *White v. Barnhart*, 287 F.3d 903, 909 and n.3 (10th Cir. 2001) (as amended) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Here, there is certainly objective medical evidence establishing a pain producing impairment and a nexus between the impairment and Leiker's allegations of pain.

In determining the credibility of a claimant's testimony regarding pain, the ALJ should consider such factors as: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (citing Soc. Sec. Rul. 96-7p); *see also Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (factors may include use and strength of painkillers, persistent attempts to find relief for pain, willingness to try any treatment prescribed, regular use of crutches or cane, regular contact with a doctor, possibility that psychological disorders combine with physical problems, daily activities, and dosage, effectiveness, and side effects of medication).

The ALJ rejected Leiker's allegations of pain because Leiker continued to look for work and because of an apparent inconsistency between what he reported Dr. Senicki told him with respect to going back to work.

In its response brief, the government asserts that the ALJ provided specific reasons for the credibility determination. It cites *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) as support for relying on a claimant's willingness to try to work for an adverse finding. The facts of *Decker*, however, are distinguishable. There, the Secretary determined that the claimant had a disability but that it improved. The claimant himself testified at the hearing that his condition had improved enough for him to be able to go back to work. 86 F.3d at 954. Here, although Leiker is looking for work out of financial necessity, there is no medical evidence indicating improvement. Moreover, I am persuaded by the view of my colleague Senior Judge John L. Kane in *Tyson v. Apfel*, 107 F. Supp. 2d 1267, 1270 (D. Colo. 2000), who noted that a claimant's good work history, such as Leiker's, entitles him or her to substantial credibility when asserting an inability to work.

I also consider the effect of the evidence submitted to the Appeals Council in reviewing this determination. When a claimant submits evidence to the Appeals Council that was not presented to the ALJ, the Appeals Council must nonetheless consider the new evidence if it is "(a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (internal quotation omitted). Evidence qualifies as "new" if it is not cumulative or duplicative, and qualifies as "material" if there is a "reasonable possibility that it would

13

have changed the outcome." *Id.* (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)).   I review this determination de novo.  *Id.*  If evidence so qualifies and was considered by the Appeals Council, then the new evidence becomes part of the whole record that I consider in determining whether the Commissioner's ultimate decision was supported by substantial evidence.  *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

In this case, new evidence was considered by the Appeals Council and some of it qualifies as new, material and time-relevant.  In particular, new examination records and opinions from Dr. Senicki and Dr. Parker so qualify.  Dr. Senicki's opinion about Leiker's ability to sit is new and revises his previous opinion; in addition, it is material because it supports Dr. Parker's opinions, which are also amplified and supported by the new records and letter.  In addition, Dr. Senicki's evidence is material to the credibility determination.  The record is not clear with respect to Dr. Senicki's evaluation of Leiker's efforts to return to work, but Dr. Senicki's post-hearing evidence clarifies that Leiker should not do a driving job.  In light of this evidence, I agree that the credibility determination is not supported by substantial evidence.

Finally, although the ALJ noted some of Leiker's daily activities and pain medication, it does not appear that he considered other key factors in evaluating Leiker's allegations of pain, including efforts at treatment and alleviation and the nature and duration of the pain.  The ALJ also is reminded that "[t]he sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity."  *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.

1993) (noting that "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain") (internal quotations and alterations omitted).

4. <u>Unsuccessful work effort</u>

Finally, Leiker contends that the ALJ erred by finding that Leiker's short employment as a bus driver did not qualify as an unsuccessful work attempt. Leiker worked from July 14, 2003 to November 6, 2003, but contends that the first eight weeks were an orientation and training period (his first regular work day was September 2, 2003).

A claimant who is working and performing substantial gainful activity will not be found disabled "regardless of [his] medical condition or [his] age, education, and work experience." 20 C.F.R. § 404.1520(b). Work performed during any period in which Leiker alleged he was disabled may show that he was able to work at substantial gainful activity level. See 20 C.F.R. § 404.1571. Leiker asserts that his work during this period of time was an "unsuccessful work attempt." The regulations, 20 C.F.R. § 404.1574(c)(4), explain that where a claimant worked between 3 and 6 months, work that lasted longer than 3 months [will] be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of [the claimant's] impairment or because of the removal of special conditions which took into account [the claimant's] impairment and permitted [him] to work and— (I) [the claimant] frequently absent from work because of [his] impairment; (ii) [his] work was unsatisfactory because of [his] impairment; (iii) [he] worked during a period of temporary remission of [his]

impairment; or (iv) [he] worked under special conditions that were essential to [his] performance and these conditions were removed.

Leiker argues that the two-month training period at RTD constituted "special conditions," and that the conclusion of his training period amounted to the removal of those special conditions. However, Leiker's argument is misplaced. Social Security Ruling (SSR) 84-25 clarifies that special conditions are those arranged to accommodate a claimant's severe impairment or an unusual job opportunity, such as in a sheltered workshop. SSR 84-25. Thus for the purposes of determining whether Leiker's work was an unsuccessful work attempt, "special conditions" are conditions that were "related to the impairment," such as an arrangement for an accommodation of the impairment or work in a sheltered workshop. The record is clear that the training period was the same for all new bus drivers and had no connection to Leiker's impairments.

The ALJ properly considered all of the relevant factors in concluding that Leiker's work activity could not be considered an unsuccessful work attempt, because Leiker worked continuously for over three months with no indication of frequent absences, that his work was unsatisfactory, or that he worked under special conditions that were removed. Accordingly, I conclude that the ALJ's determination in this regard is supported by substantial evidence.

## Conclusion

Based upon my review of the record in this case, I find that the ALJ's findings are not supported by substantial evidence. Accordingly, the determination that Leiker is not

disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on September 26, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge